JUSTICE LACY, with whom JUSTICE KOONTZ and JUSTICE KINSER
join, concurring.
I concur with the majority’s conclusion that contract § 303.06(d) entitled Kevcor to additional compensation for backfill because that section specifically authorizes payment for backfill brought onto the site from off site in accordance with the provisions of § 109.05. This specific section of the contract overrides the more general contract provisions relied upon by VDOT, §§ 302.04 and 520.06, which do not address additional compensation for backfill acquired off site. Because Asphalt Roads did not appeal the amount of additional compensation awarded by the trial court for backfill, I agree with the *461 majority and would reinstate that part of the trial court’s judgment awarding Kevcor $53,500 for the backfill.
Section 303.06, does not address additional compensation for disposal of unsuitable material. I disagree with the majority’s conclusion that § 104.03, the Differing Site Conditions Clause of the contract, is the source of such compensation. The majority reached its conclusion through a two-step process. First, it announces that the issue whether the asserted changed conditions qualified as conditions “differing materially from those in the contract” under § 104.03 was one of fact. And second, the majority concludes that, in this case, the trial court resolved conflicting evidence and made the requisite finding of fact in Kevcor’s favor, that is, that the site conditions differed materially from those in the contract. Assuming, arguendo, that the first step is correct, the record does not support a conclusion that the trial court made the factual finding asserted by the majority.
Although the trial court found that the evidence supported the additional compensation, there is nothing in the record that indicates that this conclusion was based upon an application of § 104.03 or upon any finding by the trial court of “materially different conditions.” The absence of such a finding is readily understood in light of the posture of the case when it reached the trial court.
At the time the project was bid, VDOT, Asphalt Roads, and Kevcor were aware that some of the material excavated would be unsuitable for use as backfill. The contract estimated that there would be approximately 940 cubic yards of material unsuitable for backfill. During the course of the excavation, however, VDOT’s inspector informed Kevcor that none of the material being excavated would be suitable for backfill. As a result of this change, Kevcor had to remove the unsuitable material and replace it with suitable backfill material obtained from sources outside of the project and also had to dispose of the unsuitable material outside of the project area.
VDOT, Kevcor, and Asphalt Roads engaged in many discussions regarding compensation for the backfill Kevcor brought to the site and the unsuitable material it disposed of off site. At this time, Kevcor claimed additional compensation under §§ 303.06 and 109.05 of the contract. VDOT agreed that Kevcor was entitled to additional compensation pursuant to § 104.02, entitled “Alteration of Quantities,” which allows VDOT’s engineer to change the quantities and *462 make alterations in the work which are necessary to complete the project.[1]
However, a dispute arose between the parties over the amount of backfill needed and the amount of unsuitable material disposed off site for which additional compensation was due. In quantifying its claim, Kevcor asserted that it had delivered 18,742 cubic yards of backfill and disposed of the same amount of unsuitable material off site. VDOT insisted on measuring the compensable amount of backfill by using the PB-1 Pipe Bedding “X” dimensions as shown in the contract. Using that measurement, YDOT agreed to pay, and did pay, Kevcor for about half of the amount of backfill claimed by Kevcor, but refused to pay for the remainder. Kevcor asserted that it was entitled to payment for the additional 9,323 cubic yards of backfill.
*463 Kevcor, in its claim letter dated October 16, 1995, asserted that payment for the backfill was not limited by the measurement applied by VDOT, arguing that neither §§ 303.06(d), 109.05, nor any other provision in the contract limits the compensation for additional backfill to the amount measured by the PB-1 Pipe Bedding “X” dimensions. Kevcor also asserted that, under OSHA standards, it was required to protect workers by “means of sheeting, shoring, bracing or sloping the sides of the trenches” in which they worked. Kevcor explained that it was “physically impossible for a contractor to comply with the minimum “X” dimension for bedding and maintain that trench width to the top of the excavation and also provide the necessary protection for workers” as required by OSHA standards. Thus, Kevcor concluded that VDOT erroneously limited its additional compensation for both the backfill and the disposal of unsuitable material to the PB-1 Pipe Bedding “X” dimensions, and that Kevcor should be paid for an additional 9,323 cubic yards of backfill and for the off-site disposal of an additional 9,323 cubic yards of unsuitable material.
Thus, Kevcor claimed it was entitled to an additional amount of $56,497.38 for the backfill and $103,112.38 for the off-site disposal of the unsuitable material based on $11.16 per cubic yard.[2] VDOT refused to pay this claim.
Kevcor, through Asphalt Roads, appealed VDOT’s denial of claim to the Commissioner of Transportation, pursuant to the administrative review procedure provided by Code § 33.1-386. The Commissioner also denied the claim, and Asphalt, on its own behalf and on behalf of Kevcor, filed its motion for judgment in the Circuit Court of the City of Virginia Beach.
Following an evidentiary hearing, the trial court stated from the bench that “the evidence established that Kevcor was entitled to additional compensation” for the backfill and disposal of unsuitable material, “although not as much, I would suspect, as [Asphalt] feels that it should have been entitled to on behalf of its subcontractor Kevcor.” The court went on to award $53,500.26 for the backfill and $98,286.12 for the disposal of unsuitable material, for a total of $151,786.38. While the trial court stated that the amount “breaks down to” 8,657 cubic yards at $6.18 per cubic yard for the backfill and 8,807 cubic yards at $11.16 per cubic yard for the disposal of *464 unsuitable material, the trial court did not indicate the source of these figures or the specific contract provision that authorized the additional compensation.
The dispute before the trial court was over VDOT’s assertion that it only had to pay for the amounts as measured by the PB-1 Pipe Bedding “X” dimensions. In resolving this dispute, the trial court stated only that it believed the evidence established a right to additional compensation. This statement, given the posture of the case, indicates that the trial court determined only that VDOT and the Commissioner were wrong in limiting the amount of material for which Kevcor was entitled to compensation to the PB-1 Pipe Bedding “X” dimensions. Nothing in the record, in my opinion, indicates that the trial court found that the additional 9,000 cubic yards that had to be disposed of off site was a “materially different condition” under § 104.03 of the contract.
The specific contract provision that authorized this additional payment was not the crucial issue in the trial court.[3] VDOT had already paid Kevcor for approximately 9,000 cubic yards of unsuitable material deposited off site under § 104.02.[4] It logically follows that the trial court assumed that the authorization for payment of the additional compensation it awarded was also § 104.02.
This record does not support the conclusion that the trial court made a factual finding that the site conditions were materially different than those in the contract. It does, however, support the trial court’s decision that Kevcor was entitled to additional compensation for the amount of unsuitable material it disposed of off site, and that such compensation was not limited to amounts set out in the PB-1 Pipe Bedding “X” dimensions.
Accordingly, I would reverse the decision of the Court of Appeals and reinstate that portion of the trial court’s judgment awarding Kevcor $98,286.12.

 Section 104.02 of the contract provides:
The Engineer reserves the right to make, in writing, at any time during the work, such changes in quantities and such alterations in the work as are necessary to satisfactorily complete the project. Such changes in quantities and alterations shall not invalidate the contract nor release the surety, and the Contractor agrees to perform the work as altered.
If the alterations or changes in quantities significantly change the character of the work under the contract, whether or not changed by any such different quantities or alterations, an adjustment, excluding anticipated profits, will be made to the contract. The basis for the adjustment shall be agreed upon prior to the performance of the work. If a basis cannot be agreed upon, then an adjustment will be made either for or against the Contractor in such amount as the Engineer may determine to be fair and equitable.
At the option of the Engineer, the Contractor may be directed to accomplish the work on a force account basis in accordance with the provisions of Section 109.05 of the Specifications.
If the alterations or changes in quantities do not significantly change the character of the work to be performed under the contract, the altered work will be paid for as provided elsewhere in the contract.
The term “significant change” shall be construed to apply only to the following circumstances:
(1) When the character of the work as altered differs materially in kind or nature from that involved or included in the original proposed construction or
(2) when a major item of work, as defined elsewhere in the contract is increased or decreased more than 25 percent of the original contract quantity. Any allowance for an increase in quantity shall apply only to that portion in excess of 125 percent of original contract item quantity, or in case of a decrease below 75 percent, to the actual amount of work performed or
(3) When overruns and underruns of piling amount to more than 25 percent of the original bid quantity, whether or not such item has been designated as a major item. 11-19-91 104(d)

 Although Kevcor also maintained it was entitled to approximately $10.00 a cubic yard for the backfill under § 109.05 of the contract, it agreed to accept the contract unit price for select borrow of $6.06 per cubic yard.

 In its brief before the Court of Appeals, Asphalt Roads asserted that the only issue which could be decided by the trial court was the claim submitted to and denied by the Commissioner, specifically Asphalt Roads’ attempt to obtain the difference between the actual cost of supplying suitable backfill from off site and disposing of unsuitable material and the amount allowed and paid by VDOT. VDOT did not seek a set-off or counterclaim for amounts it had already paid. Virginia Code § 33.1-387 restricts the trial court to a review of the claims denied by the Commissioner.

 The record contains a number of documents authored by VDOT indicating VDOT’s understanding that off-site disposal would be compensable under § 104.02. Similarly, there are a number of documents authored by Kevcor and Asphalt Roads that claimed compensation for the off-site disposal under § 104.02.